**IN THE UNITED STATES DISTRICT COURT**
**OF THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| Eva's Photography Inc., | Case No: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| HubPages, Inc. d/b/a Reel Rundown, | |
| Defendant. | JURY TRIAL DEMANDED |

Plaintiff Eva's Photography Inc. ("*Plaintiff*"), by and through its undersigned counsel, for its Complaint against defendant HubPages, Inc. d/b/a Reel Rundown ("*Defendant*") states and alleges as follows:

**INTRODUCTION**

1.      This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C. §101 *et seq*. Plaintiff pleads its claims in the alternative. The First Count alleges that Defendant directly infringed Plaintiff's copyright by copying and displaying the Photograph. To the extent it is determined that the act of copying and display was performed by Defendant's contributing writer rather than by Defendant itself, the Second Count alleges, in the alternative, that Defendant is vicariously liable for that infringement. Allegations that Defendant directly committed the infringing acts and allegations that a contributing writer did so are pleaded in the alternative pursuant to Rule 8(d) of the Federal Rules of Civil Procedure.

2.      Elder Ordonez ("Ordonez") is a professional photographer, photojournalist, and content creator based in New York, New York. For approximately three decades, he has earned his livelihood through the creation, publication, licensing, and distribution of original photographic works.

3.      Ordonez is well known for his photography covering celebrities, entertainment, fashion, sports, and newsworthy events. Throughout his career, he has photographed numerous

1

prominent public figures, including Princess Diana, John F. Kennedy Jr., Michael Jackson, Elizabeth Taylor, and many other internationally recognized individuals.

4.      Ordonez's photographic works have gained substantial public exposure and recognition through traditional media and social media platforms, where his original content has generated significant viewership and audience engagement.

5.      Ordonez created a photograph of American actress Jennifer Lawrence and her husband Cooke Maroney walking with their arms linked (the "*Photograph*") in which Plaintiff owns the rights and licenses for various uses including online and print publications.

6.      Defendant owns and operates a user-generated online publishing platform at hubpages.com and a network of associated niche publishing sites (collectively, the "HubPages Platform"), which Defendant operates as a commercial enterprise the revenue of which is generated by monetizing the individual articles ("Hubs") published on it by its contributing writers ("Hubbers").

7.      Upon information and belief, Defendant generates revenue principally through (a) online advertising displayed on or alongside each article, and (b) affiliate-marketing commissions earned on products and services sold through links embedded within each article

8.      Defendant owns and operates a website at reelrundown.com (the "*Website*").  Upon information and belief, the Website is part of, hosted by, and/or operated as one of the niche publishing sites within the HubPages Platform, and articles published on the Website are created, screened, published, and monetized by Defendant through the same processes and revenue programs described herein.

9.      Defendant, without authorization, reproduced and publicly displayed the Photograph in connection with its commercial activities and engaged in this misconduct knowingly and in violation of the United States copyright laws.

## PARTIES

10.      Plaintiff is a New York corporation and maintains a principal place of business in Queens County, New York.

11.     Defendant HubPages, Inc., is a Delaware Corporation with a principal place of business at 200 Vesey Street, 24th Floor, Manhattan in New York County, New York.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

13.     This Court has personal jurisdiction over Defendant because it maintains its principal place of business in New York.

14.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) because Defendant does business in this Judicial District, and/or because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this Judicial District.

## FACTS COMMON TO ALL CLAIMS

**A.      Plaintiff's Copyright Ownership**

15.     Plaintiff is a professional photography corporation by trade who is the legal and rightful owner of certain photographs which Plaintiff commercially licenses.

16.     Through its photographers, predecessors, assignors, and representatives, Plaintiff has devoted substantial time, skill, effort, and expense to developing its photography business and creating a portfolio of original photographs.

17.     Plaintiff's photographs are valuable intellectual property assets that are commercially licensed to publishers, media outlets, websites, businesses, and other third parties for authorized use in both digital and print media.

18.     Plaintiff is the author and copyright owner of numerous original photographic works protected under the Copyright Act, including the photographs that are the subject of this action.

19.     Plaintiff maintains exclusive rights under the Copyright Act, including the rights to reproduce, distribute, license, publicly display, and otherwise exploit its copyrighted photographs.

20.     Plaintiff derives income from the licensing and authorized use of its copyrighted

3

works and maintains exclusive rights in the works it creates pursuant to the Copyright Act.

21.     Plaintiff relies upon licensing revenue derived from the authorized use of its photographs and actively protects its copyrighted works against unauthorized reproduction, distribution, and display. Unauthorized use of Plaintiff's photographs deprives Plaintiff of licensing income, diminishes the value of its copyrighted works, and interferes with the market for authorized licenses.

22.     Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of Plaintiff's photographs while many others are the subject of pending copyright applications.

23.     Plaintiff regularly licenses its photographs to media outlets, brands, and commercial entities for a fee.

24.     Plaintiff's photographs are original, creative works in which Plaintiff owns protectable copyright interests.

25.     On September 9, 2019, Plaintiff first published the Photograph. A copy of the Photograph is attached hereto as Exhibit 1.

26.     In creating the Photograph, Ordonez personally selected the subject matter, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work.

27.     On September 21, 2019, the Photograph was registered by the USCO under Registration No. VA 2-171-187.

28.     Ordonez created the Photograph with the intention of it being used commercially and for the purpose of display and/or public distribution.

29.     Plaintiff acquired the rights in and to the Photograph by way of a valid written transfer agreement/written assignment.

30.     Plaintiff was the owner of the Photograph and the copyright therein at the time of the infringing acts alleged herein and remains the owner of the Photograph and copyright.

4

**B.    Defendant's Infringing Activity**

31.    Defendant is the registered owner of the Website.

32.    Defendant is the operator of the Website.

33.    Defendant is responsible for the Website's content.

34.    The Website is a part of and used to advance Defendant's commercial enterprise.

35.    The Website is monetized in that it contains paid advertisements and, on information and belief, Defendant profits from these activities.

36.    Upon information and belief, Defendant's advertising revenue is earned on a per impression and per-click basis, such that the revenue attributable to any given article increases as the number of views of, and clicks on advertisements within, that article increases.

37.    Upon information and belief, Defendant shares advertising revenue with its contributing writers on an impressions basis, and the revenue Defendant derives from any given article is therefore a direct function of the volume of traffic that article attracts.

38.    Upon information and belief, for its principal advertising programs, including the HubPages Ad Program and Google AdSense, Defendant employs a revenue-sharing arrangement under which approximately sixty percent (60%) of the advertising revenue generated by an article is allocated to the contributing writer and approximately forty percent (40%) is retained by Defendant.

39.    Upon information and belief, for affiliate-marketing programs, including the Amazon and eBay programs, Defendant retains a share of the commissions generated through links embedded in an article, on terms that, upon information and belief, approximate a fifty-percent (50%) split.

40.    Upon information and belief, Defendant implements this revenue sharing by apportioning the advertising impressions served on each article between the writer's monetization accounts and Defendant's own monetization accounts, such that for a given quantity of views, a majority of the impressions are served to the writer's benefit and the remainder are served to Defendant's benefit; in either case, the revenue earned is generated by, and increases with, the

5

traffic to that article.

41.     Accordingly, Defendant's revenue from any given article does not derive from a flat, fixed, or periodic fee that Defendant collects without regard to the content or performance of the article. Rather, Defendant's revenue is tied directly to the performance of each individual article, and Defendant earns more when an article attracts more readers, generates more advertising impressions and clicks, and produces more affiliate activity.

42.     Upon information and belief, the appeal or "draw" of the content of an article, including compelling, professionally created imagery such as the Photograph, attracts and retains readers, thereby increasing the views, advertising impressions, clicks, and affiliate activity on that article, and in turn increasing the advertising and affiliate revenue Defendant earns from it.

43.     Upon information and belief, the infringing article displaying the Photograph attracted and retained readers by reason of, among other things, the dramatic and newsworthy character of the Photograph, thereby generating advertising and affiliate revenue from which Defendant received a direct financial benefit.

44.     A direct causal relationship therefore exists between the Infringement and the financial benefit Defendant received, in that the financial benefit flowed directly from the views, impressions, clicks, and affiliate activity generated by the infringing article itself, and not from the sale of any service untethered to the infringing activity.

45.     Upon information and belief, Defendant's business model depends on aggregating advertising and affiliate revenue across a high volume of articles and traffic, and a disproportionate share of Defendant's total revenue is generated by a comparatively small number of high-traffic articles.

46.     Upon information and belief, Defendant accordingly has a direct and substantial financial interest in maximizing the traffic to, and the monetization of, the articles published on the Website, including the infringing article displaying the Photograph.

47.     Upon information and belief, every article submitted for publication on the Website is subject to a quality review process administered by Defendant, and an article that does not satisfy

6

Defendant's editorial and quality standards is not published, is not "Featured," and does not generate meaningful revenue.

48.    Upon information and belief, Defendant thereby exercises control over which articles are published, Featured, monetized, and displayed on the Website, and Defendant had the right and ability to refuse to publish, to decline to Feature, to edit, to de-index, and to remove the infringing article displaying the Photograph, including for the reason that it infringed Plaintiff's copyright.

49.    By declining to exercise its right and ability to supervise and control the infringing conduct while continuing to derive a direct financial benefit from the infringing article, Defendant profited from the Infringement while declining to stop or limit it.

50.    Upon information and belief, Defendant failed to implement and/or adequately enforce procedures designed to verify copyright ownership before publishing third-party photographs on the Website.

51.    Upon information and belief, Defendant has previously been named in copyright infringement actions involving photographic works, placing Defendant on notice of its copyright obligations.

52.    Defendant's failure to adopt or effectively enforce internal copyright policies, if any, indicates *de facto* willful infringement.

53.    On or about March 9, 2023, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed the Photograph on the Website as part of an on-line post at URL: https://reelrundown.com/celebrities/Jennifer-Lawrence-and-Cooke-Maroneys-Zodiac-Compatibility ( "*Infringement 1*"). A copy of a screengrab depicting Infringement 1 is attached hereto as Exhibit 2.

54.    The Photograph was willfully and volitionally reproduced and stored by Defendant at URL: https://images.saymedia-content.com/.image/c_limit%2Ccs_srgb%2Cq_auto:eco%2Cw_700/MTc2NDU5Njk5MDY2MTE5Mzgx/jennifer-lawrence-and-cooke-maroneys-zodiac-compatibility.webp.

55.    Plaintiff first observed Infringement 1 on May 29, 2024.

56.    On or about March 9, 2023, without permission or authorization from Plaintiff, Defendant willfully and volitionally reproduced and publicly displayed the Photograph on the Website as part of an on-line post at URL: https://reelrundown.com/search?query=Jennifer+Lawrence+and+Cooke+Maroney's+Zodiac+Co mpatibility ("*Infringement 2*"). A copy of a screengrab depicting Infringement 2 is attached hereto as Exhibit 2.

57.    Plaintiff first observed Infringement 2 on July 9, 2024.    (Hereinafter the unauthorized uses set forth above are collectively referred to as the "*Infringements*").

58.    The Infringements are copies or substantially similar copies of Plaintiff's Photograph, including protectable elements such as composition, subject matter, timing, angle, lighting, perspective, and overall expressive content.

59.    Upon information and belief, the Photograph was copied and displayed by Defendant without license or permission, thereby infringing on Plaintiff's copyrights in and to the Photograph.

60.    The Infringements each include a URL ("*Uniform Resource Locator*") that was accessible to the public and remained available for viewing for a non-transitory period of time.

61.    Upon information and belief, Defendant takes an active and pervasive role in the content posted on its Website, including, but not limited to copying, posting, selecting, commenting on and displaying images including but not limited to Plaintiff's Photograph.

62.    Defendant exercised control over the content published on its Website and was responsible for selecting, uploading, and displaying the Photograph. Defendant used the Photograph in furtherance of its commercial interests and derived financial benefit from increased user engagement, brand promotion, and/or sales.

63.    Upon information and belief, Defendant directly contributes to and exercises control over the content published on the Website by, inter alia, utilizing employees, agents, contractors, administrators, editors, moderators, social media managers, and other representatives

acting on its behalf (collectively, the "*Representatives*").

64.    Upon information and belief, Defendant directly contributes to the content posted on the Website by allowing reporters, authors, editors, contributors, and other content creators, including the author of the infringing article, to create and publish content through the Website.

65.    Upon information and belief, the author of the infringing article created and published the infringing content within the scope of, and pursuant to, the editorial, quality-review, publication, and revenue-sharing structure established and controlled by Defendant.

66.    Upon information and belief, Defendant vested its Representatives with actual and/or apparent authority to create, select, upload, publish, edit, modify, remove, monitor, and otherwise manage content appearing on the Website on Defendant's behalf.

67.    Upon information and belief, the Representatives acted within the course and scope of their agency, employment, contractual relationship, and/or other authorized relationship with Defendant when creating, selecting, uploading, publishing, displaying, promoting, and/or distributing the content containing Plaintiff's Photograph.

68.    Upon information and belief, Defendant authorized, directed, ratified, approved, and/or knowingly permitted the actions of its Representatives with respect to content appearing on the Website, including the content containing Plaintiff's Photograph.

69.    Upon information and belief, the Representatives actively reviewed, monitored, edited, managed, moderated, and otherwise exercised control over content appearing on the Website. As a result, Defendant had actual and/or constructive knowledge of the content published thereon, including the Infringements.

70.    Upon information and belief, Defendant maintained the right and ability to supervise, control, review, approve, modify, remove, and otherwise regulate content appearing on the Website and exercised such control through its Representatives acting within the course and scope of their authority.

71.    Upon information and belief, the Photograph was intentionally and willfully selected, published, displayed, and distributed by Defendant.

72. Upon information and belief, Defendant was aware of facts or circumstances from which the determination regarding the Infringements was apparent. Defendant cannot claim that it was not aware of the infringing activities, including the specific Infringements which form the basis of this complaint, since such a claim would amount to only willful blindness to the Infringements on the part of Defendant.

73. Upon information and belief, Defendant engaged in the Infringements knowingly and in violation of applicable United States copyright laws.

74. Upon information and belief, Defendant exercised editorial, managerial, and operational control over the content appearing on the Website.

75. Upon information and belief, Defendant has the legal right and ability to control and limit the infringing activities on its Website and exercised and/or had the right and ability to exercise such right.

76. Upon information and belief, Defendant monitors the content on its Website.

77. Upon information and belief, Defendant has received a financial benefit directly attributable to the Infringements.

78. Upon information and belief, the Infringements increased traffic to the Website and generated additional advertising impressions, clicks, affiliate activity, audience engagement, and revenue for Defendant.

79. Upon information and belief, Defendant distributed the Infringements to a broad audience through the Website and derived commercial value from the resulting user traffic, engagement, advertising impressions, and/or promotional exposure.

80. Upon information and belief, Defendant at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

81. Defendant's use of the Photograph harmed the actual market for the Photograph.

82. Defendant's use of the Photograph, if widespread, would harm Plaintiff's potential market for the Photograph.

83. Defendant's unauthorized use usurps the market for licensed uses of the Photograph

10

and undermines Plaintiff's ability to license the Photograph to other commercial entities.

84.     On or about June 25, 2024, Plaintiff, through counsel, notified Defendant of the infringing activity described herein and demanded that Defendant cease and desist from its unauthorized use of Plaintiff's copyrighted work and compensate Plaintiff for its unauthorized use thereof.

85.     Thereafter, on or about August 2, 2024, Plaintiff, through counsel, sent a follow-up communication seeking to resolve the dispute without litigation and affording Defendant an additional opportunity to address Plaintiff's claims.

86.     Despite receiving notice of Plaintiff's claims and being afforded multiple opportunities to resolve the matter amicably, Defendant failed and/or refused to adequately address Plaintiff's claims, thereby necessitating the commencement of this action.

87.     As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

### FIRST CAUSE OF ACTION
### *(Direct Copyright Infringement, 17 U.S.C. §501 et seq.)*

88.     Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

89.     The Photograph is an original, creative work in which Plaintiff owns a valid copyright.

90.     The Photograph is properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

91.     Plaintiff has not granted Defendant a license or the right to use the Photograph in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendant.

92.     Without permission or authorization from Plaintiff and in violation of Plaintiff's rights under 17 U.S.C. §106, Defendant copied, reproduced, distributed, and publicly displayed the Photograph, thereby violating Plaintiff's exclusive rights under the Copyright Act.

93.     Defendant's reproduction of the Photograph and display of the Photograph

11

constitutes willful copyright infringement.

94.     Upon information and belief, Defendant willfully infringed upon Plaintiff's copyrighted Photograph in violation of Title 17 of the U.S. Code, in that Defendant used, published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Photograph without Plaintiff's consent or authority.

95.     As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c).

96.     As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant.

97.     As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of Plaintiff's copyright pursuant to 17 U.S.C. § 502.

## SECOND CAUSE OF ACTION
### (Vicarious Copyright Infringement)

98.     Plaintiff repeats and incorporates, as though fully set forth herein, each and every allegation contained in the preceding paragraphs, as though set forth in full herein.

99.     This Count is pleaded in the alternative to the First Count. To the extent the Court or finder of fact determines that Defendant did not itself directly copy and display the Photograph, the direct infringement was committed by Defendant's contributing writer, author, editor, or other content creator who authored and published the infringing article containing the Photograph, and Defendant is vicariously liable for that infringement.

100.    The contributing writer directly infringed Plaintiff's copyright in the Photograph by reproducing, storing, and publicly displaying the Photograph on the Website without Plaintiff's

license, consent, or authorization, in violation of Plaintiff's exclusive rights under 17 U.S.C. §106.

101.    Upon information and belief, Defendant had the right and ability to supervise and/or control the infringing conduct of its contributing writers and declined to exercise the right and ability to supervise or control that infringing conduct despite possessing both the legal right and practical ability to do so.

102.    Defendant's right and ability to supervise and control the infringing conduct was present, existing, and actually exercised.

103.    Upon information and belief, every article submitted for publication on the Website is subject to a quality-review process administered by Defendant.

104.    Upon information and belief, Defendant reserves and exercises the right to refuse publication, edit content, remove content, remove Featured status, de-index articles from search engines, suspend contributor accounts, and terminate contributor access to the Website.

105.    Upon information and belief, Defendant exercised this control through its editorial review process, quality-review process, publication procedures, monetization programs, and content-management systems.

106.    Upon information and belief, Defendant had the practical ability to prevent the reproduction and display of the Photograph prior to publication, including by verifying whether submitted images were properly licensed, but declined to do so.

107.    Had Defendant exercised its supervisory authority to the fullest extent, the Infringement would not have occurred or would have been promptly removed.

108.    In the further alternative, and independent of vicarious liability, Defendant's contributing writer acted as Defendant's agent with respect to the creation, publication, and monetization of content published on the Website.

109.    Defendant manifested its intent to grant authority over content production through its editorial review systems, quality-review procedures, publication requirements, featuring decisions, and revenue-sharing programs.

110.    The contributing writer agreed to and operated within that structure.

13

111.    Defendant retained control over key aspects of the undertaking, including whether content would be published, featured, edited, removed, de-indexed, or monetized.

112.    The existence of an agency relationship turns upon the parties' course of conduct and Defendant's retained control over material aspects of the work. Any characterization of the contributing writer as an "independent contractor" is not dispositive because an independent contractor may simultaneously be an agent.

113.    Defendant enjoyed a direct financial benefit from the Infringement from, inter alia, the advertising and affiliate revenue generated by the infringing article itself.

114.    Unlike a flat periodic fee collected without regard to infringing activity, Defendant's revenue is tied directly to the performance of individual articles.

115.    Because the Photograph is professionally created, visually compelling content, it served as a "draw" that attracted and retained readers to the infringing article, thereby increasing impressions, clicks, affiliate activity, and revenue earned by Defendant from that article.

116.    A direct causal relationship therefore exists between the Infringement and the financial benefit Defendant received, and that benefit flowed directly from the act of infringement and not merely from the sale of a service untethered to the infringing activity.

117.    The draw need not be the primary or substantial draw; it need only be a draw.

118.    Upon information and belief, Defendant willfully vicariously infringed upon Plaintiff's copyrighted Photograph in violation of Title 17 of the U.S. Code.

119.    As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the Infringement as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against each Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c).

120.    As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may award Plaintiff the recovery of its reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505.

121.    As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to injunctive relief to prevent or restrain infringement of its copyrights pursuant to 17 U.S.C. § 502.

### JURY DEMAND

122.    Plaintiff hereby demands a trial of this action by jury.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that the Court enters a judgment finding that Defendant has infringed on Plaintiff's rights to the Photograph in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

a.    finding that Defendant infringed Plaintiff's copyright interest in and to the Photograph by copying, reproducing, distributing, publishing, and publicly displaying it without a license or consent;

b.    for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against Defendant for each copyrighted work infringed pursuant to 17 U.S.C. § 504(c), whichever is larger;

c.    for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any infringing use of any of Plaintiff's works;

d.    for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505;

e.    for pre-judgment interest as permitted by law; and

f.    for any other relief the Court deems just and proper.

DATED: July 17, 2026

**SANDERS LAW GROUP**

By:    */s/ Craig Sanders*
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 130110

*Attorneys for Plaintiff*